**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **HEATHER APPEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **INSPIRE PHARMACEUTICALS, INC.,** | § | **3-09CV1281-L** |
| | § | |
| **Defendant.** | § | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,


/s/ Cody L. Towns
Cody L. Towns
State Bar No. 24034713
Wilson C. Aurbach
State Bar No. 24036160
Jeffrey S. Tolley
State Bar No. 24042048
**RODRIGUEZ, GHORAYEB & GERSCH, LLP**
1700 Pacific Avenue, Suite 3850
Dallas, Texas  75201
Telephone: (214) 220-2929
Facsimile:  (214) 220-2020
E-mail:  ctowns@therodriguzfirm.com
E-mail:  wca@therodriguezfirm.com

**ATTORNEYS FOR PLAINTIFF**
**HEATHER APPEL**

# Table of Contents

TABLE OF CONTENTS…………………………………..……………….....................……...i

TABLE OF AUTHORITIES…………………………………….....................………………..ii

INTRODUCTION..................…………………....................…………………...…………1

FACTUAL BACKGROUND………………………………....................…………….....3

SUMMARY JUDGMENT STANDARD...……………………....................……………….4

SUMMARY JUDGMENT EVIDENCE…...………………………………….....................5

ARGUMENTS AND AUTHORITIES…………………………………………........................….5

A.      There Is Both Direct and Circumstantial Evidence of Pregnancy Discrimination...…...............5

      1.      There is Direct Evidence of Pregnancy Discrimination................................................6

      2.      There is Circumstantial Evidence of Discrimination....................................................8

      3.      There Is Evidence That Inspire's Articulated Reasons Are Merely a Pretext for Unlawful Discrimination...........................................................................10

B.      Defendant Discriminated Against Appel in Violation of the ADA........................................13

      1.      Appel Has a Disability Covered by the ADA............................................................14

      2.      Appel Was a Qualified Individual with a Disability...................................................16

C.      Inspire Is Not Entitled to Summary Judgment Based on Failure to Mitigate Damages.........20

CONCLUSION AND PRAYER…....…………….....................…………………………...22

CERTIFICATE OF SERVICE…....…………………….....................……………………...24

# Table of Authorities

**CASES**

*Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) ................................................................ 15, 16, 17

*Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004) ................................ 9

*Bryd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir. 1982) ................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ...................................................... 4

*Clark v. Tarrant County*, 798 F.2d 736, 746 (5th Cir. 1986)........................................... 5

*Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986)....................................... 22

*Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004) ................. 5

*Jatoi v. Hurst-EulessBedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)........ 11

*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)................................................... 6, 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) .................................... 9

*Miles-Hickman v. David Powers Homes, Inc.*, 613 F.Supp.2d 872, 887 (S.D. Tex. 2009).......... 21

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).................... 14

*Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)....................................................... 11

*Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990)................................ 22

*Shelly C. ex rel. Shelbie C. v. Venus Indep. Sch. Dist.*, 878 F.2d 862, 864 (5th Cir. 1989) ........... 5

*Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257 at *6
(N.D. Ill. February 10, 1997) ......................................................................................... 17, 21

*Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972)..................................................... 21

*Starr v. Oceaneering Int., Inc.*, No. 4:09-cv-0204, 2010 WL 644445 at *4
(S.D. Tex. February 18, 2010) ....................................................................................... 9, 10

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)................ 5

*Vasquez v. El Paso Cmty. Coll. Dist.*, 177 F. App'x. 422, 424 (5th Cir. 2006) ............................. 9

*Vaughn v. Sabine County*, 104 Fed.Appx. 980, 984 (5th Cir. 2004) ............................................ 22

*Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988) ................................................................. 4

*Winters v. Pasadena Indep. Sch. Dis.*, 125 Fed. Appx. 822, 2005 WL 165489 (5th Cir. 2005) .. 15

**STATUTES**

42 U.S.C. § 12102 ................................................................................................................. 15, 17

42 U.S.C. § 2000e-2(a) ............................................................................................................... 6

42 U.S.C. §12111(8) .................................................................................................................. 17

42 U.S.C. §12111(9) .................................................................................................................. 17

42 U.S.C. §2000e(k) .................................................................................................................... 6

45 C.F.R. §84.3(j)(2)(i) .............................................................................................................. 16

**RULES**

Fed. R. Civ. P. 56(c) .................................................................................................................... 4

Fed. R. Civ. P. 56(e) .................................................................................................................... 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HEATHER APPEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **INSPIRE PHARMACEUTICALS, INC.,** | § | **3-09CV1281-L** |
| | § | |
| **Defendant.** | § | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Heather Appel ("Appel") files this Brief in Opposition to Defendant's Motion for Summary Judgment and respectfully shows as follows:

**I.
<u>INTRODUCTION</u>**

1.      This is a lawsuit about pregnancy and disability discrimination.  Defendant Inspire Pharmaceuticals, Inc. ("Inspire") terminated Appel's employment the day after she returned from a national sales meeting where she received national recognition for her sales ability.  Despite Appel's excellent work performance, Inspire terminated her upon learning of her pregnancy and expected complications arising with that pregnancy.  Inspire refused to consider reasonable accommodations requested by Appel, and Inspire claimed that it needed someone who was more able to fulfill the responsibilities of Appel's position.  However, Inspire's articulated reason for terminating Appel was exposed as a mere pretext when Inspire failed to hire a replacement employee for over six months, and only after Appel filed her EEOC claim.

---

2. Inspire's Motion for Summary Judgment as to pregnancy discrimination should be denied for the following reasons:

- <u>First</u>, there is direct evidence of pregnancy discrimination. Inspire admitted that the sole reason it terminated Appel was because of complications arising from her pregnancy. Shockingly, Inspire also admits that it was willing to reinstate Appel's employment if she had a miscarriage.

- <u>Second</u>, Inspire does not dispute that Appel established a prima facie case of pregnancy discrimination because Inspire does not dispute that she was replaced by someone outside her protected class. Inspire mistakenly argues that Appel is required to show evidence of "disparate impact" which is irrelevant when the above element is met.

- <u>Third</u>, Inspire's articulated reasons for Appel's termination serve merely as a pretext for unlawful discrimination. Inspire claims that it needed a sales representative "in the field," but it failed to hire anyone to fill her position until over six months later, and only *after* Appel filed her EEOC claim.

3. Inspire's Motion for Summary Judgment as to ADA discrimination should be denied for the following reasons:

- <u>First</u>, Appel's medical condition of having an incompetent cervix due to having approximately only half of her cervix constitutes a disability under the ADA.

- <u>Second</u>, Appel was a "qualified individual" as defined by the ADA because she could have performed her job with a reasonable accommodation.

4. Inspire's Motion for Summary Judgment as to mitigation should be denied for the following reasons:

- <u>First</u>, there is a fact issue as to whether Appel exercised reasonable diligence to obtain substantially equivalent employment.

- <u>Second</u>, Inspire failed to show that there were jobs available which Appel could have discovered for which she was qualified.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**      **Page 2**

## II.
## FACTUAL BACKGROUND

5.      In mid-April 2008, Inspire hired Appel.  Pl.'s App. at 1.

6.      On September 1, 2008, Appel began informing individuals at Inspire that she was pregnant and that it was a high risk pregnancy that would require some bed rest.  *Id*. at 3.

7.      On September 8-10, 2008, Appel attended a company event in Baltimore, Maryland, where Inspire recognized for being a top a salesperson.  *Id*. at 2.

8.      On September 8, 2008, Appel's doctor drafted a letter to provide to Inspire indicating that Appel would require bed rest during her pregnancy.  Def.'s App. at 42-44.

9.      On September 10, 2008, Appel flew back from Baltimore.  Pl.'s App. at 3.  On the plane, her supervisor upgraded Appel to first class and discussed various accommodations for her pregnancy in which she could continue her job at the company.  *Id*.

10.     On September 11, 2008, Inspire notified Appel that her employment was terminated.  *Id*. at 7.  Because of company policy, Inspire allowed Appel to receive short term disability and marked her official termination date as December 15, 2008.  *Id*. at 23.

11.     On September 16, 2008, Appel had a surgery known as a "cerclage" to help her carry the developing baby through full term.  *Id*. at 2.

12.     On September 23, 2008, after learning that Appel's surgery was successful and did not result in a miscarriage, Inspire posted Appel's job position for hire.  *Id*. at 31-32.

13.     Inspire did not hire a replacement for Appel's position in September.  *Id*. at 40-41.

14.     Inspire did not hire a replacement for Appel's position in October.  *Id*. at 41.

15.     Inspire did not hire a replacement for Appel's position in November.  *Id*.

16.     Inspire did not hire a replacement for Appel's position in December.  *Id*.

17.     Inspire did not hire a replacement for Appel's position in January.  *Id.*

18.     Inspire did not hire a replacement for Appel's position in February.  *Id.* at 50.

19.     On February 15, 2009, Appel gave birth to Ericksen Appel.  *Id.* at 16.

20.     On February 26, 2009, Appel filed an EEOC charge against Inspire.  *Id.*

21.     On March 16, 2009, Inspire finally filled Appel's position by transferring a non-pregnant employee from Arkansas to Dallas.  *Id.* at 50.

## III.
## SUMMARY JUDGMENT STANDARD

22.     Summary judgment is only proper if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See* FED. R. CIV. P. 56(c); *see also Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The movant bears the initial responsibility of informing the Court "of the basis for its motion and identifying those portions of the pleadings … which it believes demonstrates the absence of a genuine issue of material fact."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant carries its burden, the burden then shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial."  *See* FED. R. CIV. P. 56(e).

23.     Summary judgment should not be granted unless the moving party "has established his rights to the judgment with such clarity that the non-moving party cannot recover … under any discernible circumstances."  *Shelly C. ex rel. Shelbie C. v. Venus Indep. Sch. Dist.*, 878 F.2d 862, 864 (5th Cir. 1989) (citing *Clark v. Tarrant County*, 798 F.2d 736, 746 (5th Cir. 1986)).  A district court must "review the record in the light most favorable to the nonmovant and draw all reasonable inferences in her favor."  *Hockman v. Westward Commc'ns, LLC*, 407

F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, the court must "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## IV.
## SUMMARY JUDGMENT EVIDENCE

24.     Plaintiff relies on the following evidence in opposition to Defendant's Motion for Summary Judgment:

| | |
|---|---|
| P.APP. 1-4 | Affidavit of Heather Appel. |
| P.APP. 5-13 | Deposition Excerpts of Gerald W. St. Peter, February 8, 2010. |
| P.APP. 14-25 | Deposition Excerpts of Heather Appel, November 19, 2009. |
| P.APP. 36-44 | Deposition Excerpts of Phil Sonnenfeld, January 14, 2010. |
| P.APP. 45-51 | Deposition Excerpts of Joanne Zellner, January 20, 2010. |
| P.APP. 26-35 | Deposition Excerpts of Mark Puwal, February 4, 2010. |

## V.
## ARGUMENTS AND AUTHORITIES

**A.     There Is Both Direct and Circumstantial Evidence of Pregnancy Discrimination**

25.     Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The term "because of sex" includes, but is not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §2000e(k). Title VII discrimination can be established through either direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Inspire's summary judgment motion alleges that there is no evidence of certain elements

necessary to establish circumstantial evidence of discrimination, but Inspire does not allege that there is no evidence of direct discrimination.

### 1.   There Is Direct Evidence of Pregnancy Discrimination.

26.     It is undisputed that Appel was an excellent employee. Inspire admits that there were no problems whatsoever with Appel's performance prior to her termination. Pl.'s App. at 38, 49. Prior to the pregnancy, Appel's supervisor repeatedly told her that she was going to be a "superstar" at the company, and at other times he referred to her as a "rising star." *Id*. at 2. Immediately preceding Appel's termination, Inspire flew her to Baltimore for a company event where she was recognized nationally for outstanding sales performance. *Id*. However, Inspire's attitude towards Appel changed almost immediately after Appel announced she was pregnant and that she expected complications with the pregnancy.

27.     It is also undisputed that Appel was fired for expected complications arising with the pregnancy. Inspire's Senior Vice President of Sales, Gerald W. St. Peter, testified that Appel was fired for complications relating to her pregnancy that implicated her ability to fulfill her job responsibilities. *Id*. at 7-8. Inspire's National Sales Director for the Western Division, Mark Puwal, also testified that she was fired because he believed Apple could not perform all of the duties outlined in her job description as a territory manager due to complications arising from her pregnancy. *Id*. at 28-30.

28.     Shockingly, Inspire admits that it waited to see if Appel would have a miscarriage from her September 16, 2008 surgery before it posted her position. They took it one step further and directly stated that if Appel had a miscarriage, they would reconsider her termination. This admission shows that Inspire was focused on one fact: Appel was pregnant. Specifically, Inspire's Senior Vice President, Mr. St. Peter, testified:

Q.     What did you say?

A.     I told Mark – I think it was just Mark and JoAnne, that I would like to hold the territory open for a period of time until – in respect to Heather's surgery as it was high risk, and, you know, if – God willing, nothing bad happened, you know, we understood it was  a very complicated situation, if there was a challenge with the surgery and something would have changed, you know, we would have welcomed Heather back – would have welcomed Heather back, so I was trying to be respectful of time and her surgery.

Q.     **And just so we're clear, the thing that could have changed would be that something bad happened to the baby and she wouldn't be pregnant anymore, is that correct**?

A.     That would have been a very bad situation.

Q.     That's the only thing you were talking about, right?

A.     **Yes**.

*Id*. at 11-12 (emphasis added).

29.     Further, Inspire's Regional Sales Manager, Phil Sonnenfeld, testified:

Q.     Just so I understand correctly, **if due to the procedure, if she had miscarried, for instance, and not been pregnant any longer, and able to come back, you wanted to have that opportunity for her; is that right**?

A.     If she was able to perform her job duties, then **we would have been welcome to have her back**.

Q.     I wasn't there at the time.  When you say complications, are you talking about if she was no longer pregnant?

A.     Well, if – my understanding, if she was no longer – I mean, if this surgical procedure did not work, if she was no longer pregnant, then she would have been able to – she would not need – she would not have needed to be on bed rest which would have prevented her from doing her job.

Q.     But after the procedure and on the 23rd, it was figured out that she was still pregnant and so you called her apparently and told her you were going to backfill the position.  Is that more or less what we're seeing in this e-mail?

A.     Yeah.  What we're seeing is that she was going to be on – she was not going to be able to return to work.

*Id*. at 42-43 (emphasis added).

30.     Inspire's National Director of Sales and the man directly responsible for approving Appel's termination, Mark Puwal, summed it up best when he testified:[1]

---

[1] Pl.'s App. at 28 (claiming that he made the decision to terminate Appel's employment).

> Q.     All right.  Do you recall why Mr. Sonnenfeld and Mrs. Zellner waited until September 23rd to post Miss Appel's positions?
>
> A.     It was my understanding that Heather Appel was having a procedure conducted and I believe **we were waiting in the very unfortunate and tragic event that something would go wrong with that surgery, that there may be an opportunity for her to continue her employment with Inspire**.

*Id.* at 31-32 (emphasis added); *see also Id.* at 47-48.

31.    Therefore, there is direct evidence that, but for the pregnancy and the complications related thereto, Appel would not have been terminated from employment.  Inspire points to no other factors that they considered.

### 2.    There Is Circumstantial Evidence of Discrimination

32.    Even if there were no direct evidence of discrimination, there is circumstantial evidence of discrimination.   In order to establish a prima facie case of employment discrimination (using the familiar *McDonnell Douglas*[2] framework), a plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably.  *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004) (underline added); *see also Starr v. Oceaneering Int., Inc.*, No. 4:09-cv-0204, 2010 WL 644445 at *4 (S.D. Tex. February 18, 2010) (slip op).  District courts only need to look at disparate treatment where the employer has not replaced the discharged plaintiff.   *See Starr*, 2010 WL 644445 at n.5; *Vasquez v. El Paso Cmty. Coll. Dist.*, 177 F. App'x. 422, 424 (5th Cir. 2006).

---

[2]  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

33.     Inspire cannot dispute that Appel has established a prima facie case of pregnancy discrimination because Inspire does not dispute that Appel was a member of a protected class, that she was qualified for her position, that she was subject to an adverse employment action, and that she was replaced by someone outside the protected class. *See* Def.'s MSJ at pp. 7-8.  Inspire confusingly ignores that Appel was replaced by a non-pregnant employee, and it defaults to the disparate treatment analysis alleging that there is no evidence of disparate treatment. *Id*.[3]  Inspire does not allege a lack of evidence as to replacement by someone outside of Appel's protected class.   Inspire cannot make that allegation because Appel was indeed replaced by someone outside her protected class when she was replaced by a non-pregnant employee on March 16, 2009.  Pl.'s App. at 50.

34.     Moreover, although not required, Appel can show evidence of disparate treatment.  For example, Inspire allowed a male sales representative by the name of Jason Wisinski to take more than 90 days absence from the company to take care of his wife who had brain cancer.  *Id*. at 33-34.  Although he took more than 90 days off, Inspire did not fire him like it fired Appel, even though they both were in sales.  *Id*.

35.     Even if Appel were required to show disparate treatment, and even if she were unable to do so, Appel would still maintain a claim for pregnancy discrimination.  *See Starr*, 2010 WL 644445 at n.4.  Controlling Fifth Circuit case law explicitly recognizes that that the "focus of the inquiry may not be obscured by the blindered recitation of litany."  *Bryd v. Roadway Express, Inc*., 687 F.2d 85, 86 (5th Cir. 1982).  In *Bryd*, the plaintiff established the first three elements of a prima facie casea, but could not establish the fourth because his position

---

[3]  Inspire's confusion appears to stem from its incomplete recitation of the elements of a prima facie case found on page six of its summary judgment motion.

was filled by another minority. *Id*. Nevertheless, the Fifth Circuit reversed summary judgment and found that the plaintiff had raised factual issues that "demonstrated potential for a prima facie case at trial." *Id*. at 87. Later, the Fifth Circuit stated that when a plaintiff cannot establish some or all elements of a prima facie case, "the district court must examine all the evidence that has been adduced for other indicia of … discrimination relating to … discharge and determine whether it is more likely than not that the employer's actions were based on illegal discriminatory criteria." *Jatoi v. Hurst-EulessBedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987).

### 3. There Is Evidence that Inspire's Articulated Reasons Are Merely a Pretext for Unlawful Discrimination

36.     Once Appel establishes a prima facie case of discrimination (which is not really in dispute as shown above), the burden shifts to Inspire to articulate "a legitimate, non-discriminatory reason for her termination." *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003). Inspire's articulated reasons fall into the following three categories: (1) Inspire could not go without a Territory Manager for six to nine months; (2) Appel was not able to perform the work within her scope of responsibilities; and (3) Appel's proposed accommodations "would have been detrimental in this instance to the business." *See* Def.'s MSJ at p. 8.

37.     Once the employer has articulated legitimate, non-discriminatory reasons for termination, the burden shifts back to the plaintiff who must then prove that the legitimate reasons were not the true reasons, but were a pretext for discrimination. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001). Plaintiff "can establish pretext either directly by showing a discriminatory reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable." *Id*.

38.     As shown above, there is direct evidence that pregnancy discrimination motivated management's decision to terminate Appel's employment.  Inspire has admitted that it knew of Appel's pregnancy complications, and further that if Appel miscarried, she would have been reinstated.

39.     Regardless, the reasons given by Inspire for Appel's termination are simply not believable.  Inspire's first and third reasons are similar and are manifestly not credible because Inspire waited over six months before filling Appel's position.  Pl.'s App. at 50.  Inspire cannot claim that it had to fire Appel because it could not go without a Territory Manager for six months or that Appel's requested accommodations would cause a detrimental impact to the business when it then allowed the position to remain open for over six months.  Obviously, Inspire believed it was just fine to go without a Territory Manager for six months, and apparently the open position was not as detrimental to the company as Inspire had professed.[4]  Moreover, the fact that Inspire did not fill Appel's position until after she filed her EEOC charge elicits the question of whether Inspire really concluded that Appel could not do the job.

40.     Inspire's second articulated reason is also not believable because Appel was able to perform her work responsibilities.  Appel's primary job responsibility as a Territory Manager was to drive drug sales for the company by building and maintaining relationships with doctors in her territory.  *Id*. at 1-2.  Appel worked out of an office on the second floor of her home as well as from her car when visiting doctors in person.  *Id*.  Inspire provided Appel with a company computer which she maintained in her home office, and she used this computer for various work-related activities, including company e-mail and communicating with doctors in her territory.  *Id*.  Inspire also provided Appel with a mobile "stat" device that allowed her to

---

[4]  Inspire has cited no evidence to show otherwise (e.g. lost sales, etc.).

record sales information about doctors in her territory.  *Id.*  Other than her home office, Appel did not report to an Inspire business office as part of her daily work activities.  *Id.*  Inspire told Appel to treat her work as her own personal business, and it advised her to do whatever was necessary to drive her business.  *Id.*  As a result, Appel was independent and viewed her position as a very entrepreneurial one.  *Id.*

41.     Regardless of how Appel went about performing her job, she was ultimately judged by the sales that she was able to make for Inspire.  While it is true that Appel's pregnancy eventually caused her to be unable to make face-to-face visits with doctors at their offices, it did not prevent her from communicating with these doctors, and thus, doing her job.  *Id.*  By the time Inspire notified Appel of her termination, she had already built relationships with various doctors in her territory.  *Id.*  Appel could still have continued to fulfill her primary job responsibility – making drug sales – from home.  *Id.*  Inspire may disagree, but disagreement is not a basis for summary judgment.

42.     Appel described how she would have been able to work from home the remainder of her pregnancy.  *Id.* at 3, 18-19, 24.  For example, Appel could have contacted doctors directly through e-mails and phone call updates.  *Id.* at 3, 18-19, 24.  Appel could have sent the doctors sample request cards.  *Id.*  Appel could have done "e-detailing."  *Id.*  E-detailing involves video-recording one's self talking about the new drugs and new studies, and then emailing to the doctors in the territory.  *Id.* at 18.  Appel could also have studied to become an expert on the drugs and to disseminate sales materials region wide to help the other sales reps.  *Id.* at 3, 18-19, 24.  It is important to note that Appel's bedroom is on the second floor of her home, the same floor as her home office.  *Id.* at 1, 3.  After all, Appel's customers were doctors and medical professionals who would understand and likely sympathize with her condition.   It is

inconceivable that these customers, like Inspire, would consider punishing Appel because she was experiencing a high-risk pregnancy.

43.     Inspire cannot deny that Appel was qualified for her position because it introduced summary judgment evidence that she was indeed qualified for her position. Inspire's National Sales Director for the Western Division, Mark Puwal, attempts to identify a number of companies allegedly hiring employees to do pharmaceutical sales work since September 2008 (when Inspire terminated Appel), and Puwal declared that "Plaintiff would have been qualified for those positions." Def.'s App. at 2. Puwal did not limit his statement to say that she would be qualified after she got off of bed rest or when she was not pregnant. Thus, Inspire's testimony is that she was qualified to do any of these jobs arising from September 2008 onward.

44.     Therefore, Appel has raised a genuine issue of material fact as to whether Inspire's articulated reasons are worthy of credence and not merely a pretext for pregnancy discrimination.[5] The Supreme Court held that "a prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

**B.     Defendant Discriminated Against Appel in Violation of the ADA**

45.     In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) she suffers from a disability; (2) she is qualified for the job; (3) she was subjected to an adverse employment action on account of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees. *Winters v. Pasadena Indep.*

---

[5] Although Defendant cites testimony from one of its witnesses that non-personal promotion does not work long-term in the industry, the testimony does not address the effect of short-term non-personal promotion, and this fact is in dispute. *See* Def.'s MSJ at p. 8. Further, this witness was not designated as an expert.

*Sch. Dis.*, 125 Fed. Appx. 822, 2005 WL 165489 (5th Cir. 2005).  Inspire moves for summary judgment only on the first two elements, not the latter two.  *See* Def.'s MSJ at pp. 10-16.  However, Appel does in fact suffer from a disability under the ADA, and she was qualified for the job.

### 1.   Appel Has a Disability Covered by the ADA

46.     Section 12102(1)(A) defines "disability" under the ADA as "a physical or mental impairment that substantially limits one or more major life activities of such individual."   42 U.S.C. §12102.  In order to determine whether someone has a disability under the ADA, courts should examine the following three elements: (1) determine whether a person has a physical or mental impairment; (2) determine which life activity is affected and whether it constitutes a major life activity under the ADA; and (3) determine whether the impairment substantially limits the major life activity.  *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (holding that an HIV infection is a physical impairment which substantially limits the major life activity of reproduction).

47.     First, the Supreme Court has looked to guidelines issued by the Department of Health, Education, and Welfare ("HEW") to determine the definition of a physical or mental impairment.  *Bragdon*, 524 U.S. at 632.  HEW defines a "physical or mental impairment" to mean:

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; <u>reproductive</u>, digestive, genito-urinary; hemic and lymphatic skin; and endocrine; or
>
> (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

45 C.F.R. §84.3(j)(2)(i) (underline added).

48.     In this case, Inspire has completely misunderstood and misstated Appel's disability.  Appel does not allege that her disability was pregnancy.   Instead, Appel's disability is having an incompetent cervix which is approximately half of its normal size which creates high risk pregnancies.  Specifically, approximately half of Appel's cervix was removed in 1999 through an operation known as a loop electrosurgical excision procedure or "LEEP" exam.  Pl.'s App. at 2, 17.  Doctors have cautioned Appel that, due to this surgery, she is a candidate for high risk pregnancies.  *Id*. at 2.  Indeed, by the time Appel announced she was pregnant to Inspire, a medical doctor had already determined that she had a high-risk pregnancy and an incompetent cervix which required an additional surgery to save the pregnancy and lengthy bed rest.  *Id*. Thus, Appel is afflicted with the physiological condition of having an anatomical loss of having only half a cervix.  This condition affects reproduction and constitutes a physical impairment under the ADA.   Further, the evidence shows that Inspire knew of this condition before it terminated Appel.  *Id*. at 8 ("I believe it had to do – the complications had to do with her cervix…").

49.     Second, the Supreme Court has held that reproduction falls within the phrase "major life activity" for the purposes of the ADA.  *Bragdon*, 524 U.S. 639.  This is because "[r]eproduction and the sexual dynamics surrounding it are central to the life process itself." *Bragdon*, 524 U.S. at 638.  In so holding, the Supreme Court included reproduction in the list of activities that constitute "major life activities" under §12102(2) of the ADA.  *Id*. at 639.

50.     Third, the Supreme Court has held that "[w]hen significant limitations result from impairment, the definition is met even if the difficulties are not insurmountable."  *Bragdon*, 524

U.S. at 641.  Doctors have advised Appel that any pregnancy would be high risk due to her only having half of a cervix.  Pl.'s App. at 2.  Indeed, Appel's doctor directed that she be on bed rest during her pregnancy in order to successfully reproduce.  *Id.*

51.     As Appel meets all three elements above, Appel clearly has a disability as defined by the ADA.  *See Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257 at *6 (N.D. Ill. February 10, 1997) (holding that plaintiff's incompetent cervix, a condition which jeopardized her ability to carry any fetus to term, constituted a disability under the ADA).

### 2.   Appel Was a Qualified Individual with a Disability

52.     Section 12111(8) of the ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12111(8).  The ADA further defines a "reasonable accommodation" to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position … and other similar accommodations for individuals with disabilities."  42 U.S.C. §12111(9).

53.     Inspire cannot deny that Appel was qualified for her position because it introduced summary judgment evidence that she was indeed qualified for her position.  Inspire's National Sales Director for the Western Division, Mark Puwal, attempts to identify a number of companies allegedly hiring employees to do pharmaceutical sales work since September 2008 (when Inspire terminated Appel), and Puwal declared that "Plaintiff would have been qualified for those positions."  Def.'s App. at 2.  Puwal did not limit his statement to say that she would be qualified after she got off of bed rest or when she was not pregnant.  Thus, Inspire's testimony is that she was qualified to do any of these jobs arising from September 2008 onward.  While

Appel objects to these statements on the basis that they do not constitute competent evidence that such jobs actually existed and were substantially equivalent employment, these statements evidence Puwal's belief that Appel would have been qualified for those jobs had they existed.

54.    Notwithstanding Puwal's admission that Appel was qualified to do similar jobs, Inspire claims that Appel was not "able to perform the essential functions of her job…"  Def.'s MSJ at p. 12.  In support of this proposition, Inspire relies on a two-page job description which is attached to Puwal's Declaration.  *Id.*; Def.'s App. at 4-5.  However, the job description is unreliable for two reasons.  First, the first page indicates that the job description was created in November 2008, months after Appel was terminated from her employment on September 11, 2008.  It does not purport to represent the duties of a Territory Manager while Appel was an employee.  Second, the second page to the job description appears not to belong with the first page as the font and format are different.  It also does not contain the same date (or any date at all) as the first page.  Interestingly, Appel would meet almost every single job requirement listed on the first page of the job description even while on bed rest.

55.    Despite what Inspire claims, Appel could in fact do her job while at home. Appel's primary job responsibility as a Territory Manager was to drive drug sales for the company by building and maintaining relationships with doctors in her territory.  Pl.'s App. at 2-3.  Appel worked out of an office on the second floor of her home as well as from her car when visiting doctors in person.  *Id.*  Inspire provided Appel with a company computer which she maintained in her home office, and she used this computer for various work-related activities, including company e-mail and communicating with doctors in her territory.  *Id.*  Inspire also provided Appel with a mobile stat device that allowed her to record sales information about doctors in her territory.  *Id.*  Other than her home office, Appel did not report to an Inspire

---

business office as part of her daily work activities. *Id*. Inspire told Appel to treat her work as her own personal business, and it advised her to do whatever was necessary to drive her business. *Id*. As a result, Appel was independent and viewed her position as a very entrepreneurial one. *Id.*

56.     Regardless of how Appel went about performing her job, she was ultimately judged by the sales that she was able to make for Inspire. While it is true that Appel's pregnancy eventually caused her to be unable to make face-to-face visits with doctors at their offices, it did not prevent her from communicating with these doctors. *Id*. By the time Inspire notified Appel of her termination, she had already built relationships with various doctors in her territory. *Id*. Appel could still have continued to fulfill her primary job responsibility – making drug sales – from home. *Id*. For example, Appel proposed a number of accommodations that would have allowed her to achieve this objective.

57.     Inspire falsely asserts that Appel never requested an accommodation. However, the undisputed evidence shows otherwise. Although she would be on bed rest, Appel had already established relationships with the doctors in her territory, and she proposed various ways in which she could continue her work during her pregnancy. Pl.'s App. at 3, 18-19, and 24. For example, Appel offered to do "e-detailing." *Id*. E-detailing involves video-recording one's self talking about the new drugs and new studies, and then emailing to the doctors in the territory. *Id*. at 18. Appel offered to contact doctors directly through e-mails and phone call updates. *Id*. at 3, 18-19, and 24. Appel could send the doctors sample request cards. *Id*. Appel offered to study and become an expert on the drugs and to disseminate sales materials region wide to help the other sales reps. *Id*. It is important to note that Appel's bedroom is on the second floor of her home, the same floor as her home office. *Id*. at 1, 3.

58.     Inspire's Senior Vice President of Sales admits that Appel talked with him about how she could continue to perform her work responsibilities during the pregnancy. *Id*. at 9-10. St. Peter admits that they discussed phone calls and e-mails to doctors, sending out sample fulfillment cards, and even a home office rotation program. *Id*. Inspire's Regional Sales Manager also admits that Appel talked to him about she could continue to work through the pregnancy. *Id*. at 39. Sonnenfeld admits that this included contacting the doctors through letter, e-mails, and calls. *Id*.

59.     History indicates that Appel was right. Even without any contact from Appel, various doctors called Appel after her termination seeking Inspire's products. *Id*. at 3. It is easy to see that Appel would have been able to bring in sales from home capitalizing on her already formed doctor relationships. While Inspire denies that this would have worked, it offers no evidence whatsoever that it would not have worked. In fact, Inspire never gave any of these accommodations a chance as it terminated Appel's employment within hours after she proposed them. *Id*.

60.     Appel was able to perform the essential functions of her job (e.g. making sales) from home. The fact that Inspire took six months to hire Appel's replacement shows that it was not that critical that Inspire have a representative in the field face-to-face. Inspire may disagree on whether these accommodations were reasonable, but mere disagreement is not enough to prevail on summary judgment.

61.     Even if Inspire were proved to be ultimately correct in its belief that Apple would not have been successful in making sales from home, Inspire failed to make a reasonable accommodation by allowing Appel to take an unpaid leave of absence and still keep her job. Specifically, when it was clear that Inspire refused to make any other accommodations, Appel

offered to take a leave of absence without pay until the pregnancy was over in order to keep her job. *Id*. at 20. A temporary leave of absence can be a reasonable accommodation for a temporary, but disabling condition. *See Soodman*, 1997 WL 106257 at *6-7. However, Inspire refused and terminated her anyway.

C.    Inspire Is Not Entitled to Summary Judgment Based on Failure to Mitigate Damages

62.    While a plaintiff has a "duty to mitigate her damages by using reasonable diligence to obtain substantially equivalent employment," the employer "has the burden of proving failure to mitigate … and must show not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have discovered and for which she was qualified." *Miles-Hickman v. David Powers Homes, Inc*., 613 F.Supp.2d 872, 887 (S.D. Tex. 2009); *see also Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). Thus, in order for Inspire to establish its defense, it must show that Appel (1) failed to exercise reasonable diligence to obtain substantially equivalent employment; and (2) that there were jobs available which plaintiff could have discovered for which she was qualified. When a movant in a summary judgment has a burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986).

63.    "Substantially equivalent employment" means "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). A plaintiff has "no obligation to accept employment what is not substantially equivalent to her prior employment in order to minimize damages." *Vaughn v. Sabine County*, 104 Fed.Appx. 980, 984

(5th Cir. 2004).  The reasonableness of plaintiff's diligence should be evaluated in "light of the individual characteristics of the claimant and the job market." *Sellers*, 902 F.2d at 1193.

64.     Inspire is unable to meet its first element of its mitigation defense because "reasonable diligence" is a fact issue to be determined by the trier of fact.  *Id*.  As a result, it is unsurprising that Inspire failed to cite a single case in which a court granted summary judgment on this defense.  Appel states that the reason she did not immediately look for another job was because she was on bed rest through the length of her pregnancy, and then she had to deal with a newborn confined to the neo-natal intensive care unit for 21 days after birth.  Pl.'s App. at 4.  It is up to the trier of fact to determine whether it was reasonable for Appel not to look for another job while she was on bed rest and unable to interview at other employers.  However, Appel has looked at opportunities on the internet as well as through personal connections, including speaking with an employee at GlaxoSmithKlein regarding employment opportunities.  *Id*.  Therefore, it is up to the trier of fact to determine whether or not Appel exercised reasonable diligence to obtain substantially equivalent employment.

65.     Inspire failed to meet the second element of its mitigation defense because it failed to show that there were jobs available which plaintiff could have discovered for which she was qualified.  In an attempt to meet this element, Inspire claimed that "there were jobs available in the market at the time with seventeen different companies which Plaintiff could have discovered and for which she was qualified."  Def.'s MSJ at p. 18.  The only evidence of this allegation is included in the Declaration of Mark Puwal in which he simply states that, between September 2008 and March 2010, seventeen enumerated companies "sought to hire employees to do pharmaceutical sales work."  *See* Def.'s App. at 2.  However, Appel objects to and moves to strike paragraph five and the first sentence of paragraph six of this Declaration because it lacks

foundation and fails to state how Mark Puwal came to a personal knowledge that these enumerated companies sought to hire employees to do pharmaceutical sales work or how these positions were substantially equivalent to Appel's position at Inspire.  *See* Fed. R. Evid. 602. Inspire failed to introduce any job postings into the summary judgment evidence, and Inspire failed to show that any of the mystery jobs referenced in the Puwal Declaration constituted "substantially equivalent employment."  Inspire failed to show that any of these mystery jobs offered identical promotional opportunities, identical compensation, identical responsibilities, or identical working conditions.  Indeed, any knowledge obtained by Puwal regarding these positions would also constitute inadmissible hearsay evidence.  *See* Fed. R. Evid. 802.

66.     Therefore, Inspire has failed to meet the two elements necessary to establish its burden on mitigation of damages.

## VI.
## CONCLUSION AND PRAYER

67.     For the reasons stated above, Defendant is not entitled to summary judgment against Plaintiff in this action.

Respectfully submitted,


*/s/ Cody L. Towns*
Cody L. Towns
State Bar No. 24034713
Wilson C. Aurbach
State Bar No. 24036160
Jeffrey S. Tolley
State Bar No. 24042048
**RODRIGUEZ, GHORAYEB & GERSCH, LLP**
1700 Pacific Avenue, Suite 3850
Dallas, Texas  75201
Telephone: (214) 220-2929
Facsimile:  (214) 220-2020
E-mail:  ctowns@therodriguzfirm.com
E-mail:  wca@therodriguezfirm.com

**ATTORNEYS FOR PLAINTIFF
HEATHER APPEL**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served as shown below on the 26th day of March, 2010.


/s/ Cody L. Towns
_____
Cody L. Towns


**<u>Via ECF</u>**
Barry A. Moscowitz
Rachael Chong Walters
**THOMPSON, COE, COUSINS & IRONS**
700 N. Pearl Street, 25th Floor
Dallas, Texas  75201
Telephone: (214) 871-8200
Facsimile:  (214) 871-8209