IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **HEATHER APPEL,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action. No. **3:09-CV-1281-L** |
| | § | |
| **INSPIRE PHARMACEUTICALS, INC.,** | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are:  (1) Defendant's Motion for Summary Judgment, filed March 5, 2010;

(2) Plaintiff's Motion to Strike Portions of the Declaration of Mark Puwal, filed March 26, 2010; and

(3) Plaintiff's Motion for Leave to File Sur-Reply Brief in Opposition to Defendant's Motion for

Summary Judgment, filed April 16, 2010.  After carefully considering the motions, briefs, record, and

applicable law, the court **grants** Defendant's Motion for Summary Judgment; **denies** Plaintiff's

Motion to Strike Portions of the Declaration of Mark Puwal; and **denies** Plaintiff's Motion for Leave

to File Sur-Reply Brief in Opposition to Defendant's Motion for Summary Judgment.

**I.      Factual and Procedural History**

Plaintiff Heather Appel ("Plaintiff" or "Appel") filed her Original Complaint on July 6, 2009.

Appel asserts claims of gender and pregnancy discrimination, in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and disability discrimination, in

violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), against

Defendant Inspire Pharmaceuticals, Inc. ("Defendant" or "Inspire").

The court sets forth those facts that are not in dispute.  Inspire is a pharmaceutical company that sells products for ophthalmic and pulmonary conditions.  Plaintiff was hired by Defendant in April 2008 as a Territory Manager.  Appel began informing individuals at Inspire that she was pregnant and that her pregnancy was considered high risk in September 2008.  Appel's physician, Dr. Ezell S. Autry, signed a Health Care Provider Certification form dated September 8, 2008.  That form states that Plaintiff "will be house confined from 9/16/08 through the duration of [her] pregnancy." Def.'s App. 42.  On September 11, 2008, Defendant terminated Plaintiff's employment. Appel underwent a surgical procedure on September 16, 2008, which was successful.  Defendant posted Plaintiff's position for hire on September 23, 2008.  Appel remained on short-term disability for three months, and her official termination date was December 15, 2008.  Appel's position was filled on March 16, 2009, by a nonpregnant woman.

## II.    Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not

make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.     **Analysis**

Defendant contends that it is entitled to judgment as a matter of law on all of Plaintiff's claims.  With respect to her pregnancy discrimination claim, Inspire contends that there is no evidence of disparate treatment or pretext.  Inspire argues that Plaintiff's disability claim fails because she is not disabled or a qualified individual with a disability.  It further argues that she never requested an accommodation or that any requested accommodation was not reasonable.  Finally, Defendant contends that Plaintiff's claimed damages are limited because she failed to mitigate them by seeking other, comparable employment.

Plaintiff contends that there is both direct and circumstantial evidence of pregnancy discrimination and that the evidence supports a finding that Inspire's articulated reasons for termination are merely a pretext for unlawful discrimination.  She contends that she has a legal disability and was a qualified individual with a disability.  Finally, Appel argues that Inspire is not entitled to summary judgment on its affirmative defense of her failure to mitigate damages.

A.     **Pregnancy Discrimination**

Plaintiff alleges that Defendant discriminated against her because of her pregnancy.  She contends that Inspire fired her when it learned that she was pregnant and that it further held her job open until her surgery determined whether she would miscarry the pregnancy.

1.     **Legal Standard under Title VII**

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions . . . ."  42 U.S.C. § 2000e(k).

To survive a motion for summary judgment, a plaintiff in a Title VII discrimination case must first establish a *prima facie* case of discrimination by a preponderance of the evidence.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action.  *McDonnell Douglas*, 411 U.S. at 802-04.  If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination.  *Id.*

The third step of the *McDonnell Douglas* test has been altered by the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that in Title VII cases, the mixed-motives theory of discrimination is available in cases with circumstantial evidence of discrimination).  In light of *Desert Palace*, the Fifth Circuit has modified the final step of *McDonnell Douglas*.  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).  In order to survive summary judgment under the modified *McDonnell Douglas* test, at the final step, a plaintiff must offer sufficient evidence to create a genuine issue of fact that either:  (1) a defendant's reason is not true, but is instead a pretext for discrimination, or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" is the plaintiff's protected characteristic.  *Id.*; *see also Smith v. Xerox Corp.*, ___ F.3d ___, 2010 WL 1052837, *4-5 (5th Cir. Mar. 24, 2010).

After a Title VII case reaches the pretext stage, the question to be decided for the resolution of a motion for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of sex.  *St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 511 (1993).  A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003).  "Pretext-plus" is not required to support an inference of retaliatory discrimination.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law.  *See Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897.  This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  *Reeves*, 530 U.S. at 148.  On the other hand, in the context of an unlawful discrimination or retaliation claim, summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [sex] was a determinative factor in the actions of which plaintiff complains."  *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 373 n. 23 (5th Cir.), *reh'g denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)) (en banc).

2.      **Analysis**

To establish a *prima facie* case of sex discrimination under Title VII, Plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citations omitted). Plaintiff may also satisfy the fourth element by showing that she was replaced by someone outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (footnote omitted).

Defendant contends that Plaintiff cannot establish a *prima facie* case of pregnancy discrimination because there is no evidence of disparate treatment of employees outside the protected class. Plaintiff responds that Defendant misstates the legal standard and that there is direct and circumstantial evidence of pregnancy discrimination.

As evidence of direct discrimination, Plaintiff points to comments made by Defendant's Senior Vice-President of Sales, Gerald W. St. Peter, and its National Sales Director for the Western Division, Mark Puwal. She also argues that Defendant admits that it would have reconsidered her termination if she miscarried her pregnancy. Plaintiff also points to another employee, Jason Wisinksi, who she contends took more than ninety days absence from the company to take care of his wife who had brain cancer. She contends that although he took more than ninety days off, Defendant did not fire him.

The parties blur the distinction between Plaintiff's pregnancy and the limitations her high-risk pregnancy placed upon her job. There is no direct evidence that Defendant fired Plaintiff because she was pregnant. Defendant maintains that she was terminated because the medical limitations

required by her physician made it impossible for her to fulfill her job duties. The testimony regarding her surgical procedure and possible miscarriage is stronger; Defendant's employees did admit that Plaintiff would not have been fired if she was not pregnant. This testimony, however, is not direct evidence of any animus or discrimination but rather reflects the limitations on Plaintiff in fulfilling her job responsibilities during her home confinement for the duration of her high-risk pregnancy. Defendant also responds that Plaintiff has failed to present evidence that her circumstances were the same as Wisinski's because she cannot state whether he was legally entitled to twelve weeks of pay under the Family and Medical Leave Act.

With respect to a circumstantial case of pregnancy discrimination, this is a closer call. Plaintiff has shown that she was pregnant, her employment was terminated, and she was replaced by a person outside the protected class. The determinative issue is whether Plaintiff was qualified for her job with the medical restrictions placed upon her by her physician.

Defendant contends that it had to terminate Plaintiff's employment when it received her doctor's note stating that she would be confined to her home throughout her pregnancy. It argues that she could not perform her job responsibilities from home. Defendant points to the Territory Manager job description, which states:

> Inspire's Territory Manager position is considered an outside sales position which requires the ability to physically call on physicians in order to promote Inspire's pharmaceutical products. A major component of the position includes detailing the physicians regarding the products, answering questions and dropping off samples during these visits, which require a signature in order to stay within compliance regulations, therefore requiring face to face contact with the provider's officer. The Territory Manager is also required to call on pharmacies and other special customers.
>
> The Territory Manager position requires the ability to receive sample shipments of three products along with all promotional material which

at the time were being distributed to physician offices.  These boxes may weigh up to 40 lbs, each box needs to be opened and broken down into smaller allocations.   All materials/samples are then transferred into the company vehicle for daily use.

Territory Managers are required to have the ability to spend extended periods of time behind the wheel of their company vehicles.  Drive time per Territory Manager will vary depending on the size and demographics of the territory and scheduled rotating.   Territory routing will usually consist of a 2 - 3 week call cycle requiring the face to face contact with each office.

Def.'s App. 5.  Defendant contends that the decision to terminate Plaintiff's employment was made by Puwal because he determined that it was not feasible to have a territory go without a Territory Manager for six to nine months and that Plaintiff was not able to fulfill her job responsibilities, which included face-to-face calls with physicians, carrying a bag, and being out in her territory.  Defendant also points to the testimony of St. Peter, who agreed with Puwal that Plaintiff could not fulfill her job responsibilities in light of her physician's evaluation of her condition.  St. Peter also testified that face-to-face promotion is necessary in the pharmaceutical industry and that nonpersonal promotion does not work long term in the business.  He testified that the "number one powerful driver of sales" was "having somebody in the field visiting those offices every day," and that without it, sales would decline in six to eight weeks.  *Id*. at 48.

Plaintiff responds that she could perform her job responsibilities even while restricted to her home.  She contends that she had a company computer and a home office, in which she could communicate with doctors and use her company e-mail.  She argues that she had a mobile "stat" device, which she could use to record sales information about doctors in her territory.  Plaintiff also points to the first page of the job description of Territory Manager.  *Id*. at 4.  On that page, Inspire listed under the heading of "general responsibilities/decision making authority" the following duties:

Sells products to physicians, managed care organizations, and other healthcare providers.  Develops local business plan to increase market share by outlining tactics, activities and resources.  Demonstrates thorough knowledge of Inspire products, competitor products and product objectives.

Utilizes customer-focused selling techniques, continually assessing the knowledge of the customer and strategy to maintain high customer intimacy and customer knowledge of Inspire products.  Actively seeks and displays knowledge of key customers in territory.

Develops and delivers informative sales presentations based on customer needs.  Develops creative sales strategies to reach "hard-to-see" doctors/"hard-to-work" accounts.  Works collectively with other representatives in arranging speakers, displays and special programs.  Positively impacts sales in territory.  Calls on retail pharmacies and other special customers.  Some travel required.

*Id.*

Appel states that she could have directly communicated with physicians through e-mail and phone calls and that she could have sent them sample request cards.  She contends that she could have done "e-detailing," which she describes as video recording herself talking about new drugs and studies and then e-mailing the video to doctors in her territory.  She states that she could have studied new drugs and disseminated sales materials throughout the region to assist other sales representatives.  She contends that because she was working with doctors and medical professionals, they would have understood her medical limitations and could have continued to work with her while she was on bed rest.

The court determines that Plaintiff has failed to prove a *prima facie* case of pregnancy discrimination.  First, there is no evidence of any disparate treatment of Appel because she was pregnant.  Defendant points to the job description of Territory Manager and the statement from St. Peter that after a few weeks, nondirect contact would lead to a decline in sales.  There is no evidence

that any nonpregnant person was allowed to take an extensive leave of absence that would prevent them from making sales calls.  *See Garcia v. Woman's Hosp. of Texas*, 143 F.3d 227, 231 (5th Cir. 1998).  Moreover, while Plaintiff points to certain aspects of her job that she could continue to do, she simply does not explain how she could perform other parts of the job that Defendant deems essential, including making face-to-face contact in provider's offices, lifting, opening, and sorting through forty-pound boxes, and spending extensive amounts of time behind the wheel of company vehicles.  While her argument focuses on the intellectual aspect of her job, Appel simply fails to show how she could comply with the physical components of her job description.  Moreover, she presents no evidence to rebut Defendant's evidence that the physical components are essential functions of her job.  The court therefore finds that Appel was not "qualified" to perform the job of Territory Manager while under the medical restrictions placed upon her by her doctor.  Defendant is therefore entitled to judgment as a matter of law on Plaintiff's Title VII pregnancy discrimination claim.

### B.       Disability Discrimination

Defendant also moves for summary judgment of Plaintiff's disability discrimination claim brought pursuant to the ADA.  Plaintiff contends that her disability is an incompetent cervix that is approximately half of its normal size and that creates high-risk pregnancies.  Defendant argues that Plaintiff is neither disabled nor a qualified individual with a disability and that it had no duty to accommodate her.

### 1.       Legal Standard under the ADA

The ADA is an antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities.  *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 161 (5th Cir.), *cert. denied,* 519

U.S. 1029 (1996).  The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

A person "may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas* . . . ." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir. 1999).  To establish a *prima facie* case of intentional discrimination under *McDonnell Douglas,* a plaintiff must show that she "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Id.*  The employer then "must show a legitimate, nondiscriminatory reason for its action." *Id.*  "The employee ultimately bears the burden of showing that the employer's actions were motivated by considerations prohibited by the statute." *Id*.

A person is disabled under the ADA if she (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2).  The court must interpret this definition strictly. *Carmona v. Southwest Airlines Co.*, ___ F.3d ___, 2010 WL 1614504, *6 (5th Cir. Apr. 22, 2010) (citations omitted).  Appel contends that her disability is an incompetent cervix and that this qualifies as a disability under the ADA.

### 2.     Analysis

Defendant argues that Appel does not have a legal disability as defined by the ADA and that she is not a qualified individual with a disability.  It contends that it therefore had no duty to accommodate her alleged disability.

### a.     Disability

Defendant argues that pregnancy and related medical conditions are not considered disabilities under the ADA.  It contends that the regulations specifically exclude pregnancy as a physical impairment that qualifies as a disability under the ADA.  *See Villareal v. J.E. Merit Constructors, Inc.*, 895 F. Supp. 149, 152 (S.D. Tex. 1995) ("[C]onditions, such as pregnancy, that are not the result of a physiological disorder are not impairments.") (quoting 29 C.F.R. 1630).  It also cites several cases that hold that pregnancy and some complications of pregnancy are not disabilities under the ADA.  *See Gorman v. Wells Mfg. Corp.*, 209 F. Supp. 2d 970, 976 (S.D. Iowa 2002), *aff'd*, 340 F.3d 543 (8th Cir. 2003) (holding that plaintiff's pregnancy-related nausea, vomiting, dizziness, severe headaches, and fatigue did not qualify as disabilities under the ADEA); *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 627 (S.D.N.Y. 1996) ("[P]regnancy and related medical conditions are not disabilities under the ADA."); *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213, 228 (S.D.N.Y. 1997) (holding that "pregnancy-related complications usually will not qualify a woman for ADA protection" and finding no disability where plaintiff had a history of infertility, a prior miscarriage, and spotting and cramping).

Plaintiff responds that she does not contend that her pregnancy is a disability but that her incompetent cervix meets the legal definition of "disability."  She cites an unpublished decision from another district court holding than an incompetent cervix is a disability under the ADA.  *Soodman*

*v. Wildman, Harrold, Allen & Dixon*, 1997 WL 106257, *6 (N.D. Ill. Feb. 10, 1997).  Plaintiff also cites several cases that acknowledge that the condition of pregnancy is not a disability but that physiological disorders relating to pregnancy can be.  *See Hernandez v. City of Hartford*, 959 F. Supp. 125, 130 (D. Conn. 1997) (noting that a "pregnancy-related condition can constitute a disability within the meaning of the ADA" and holding that there was a genuine issue of material fact concerning whether plaintiff's premature labor qualified as a physiological disorder rather than a condition) (quotation and citation omitted); *Gabriel v. City of Chicago*, 9 F. Supp. 2d 974, 980-82 (N.D. Ill. 1998) (noting that "pregnancy-induced ailments and complications may constitute physical impairments" and holding that back pain, stomach pain, and swelling could constitute a physiological disorder of the reproductive system and denying summary judgment); *Patterson v. Xerox Corp.*, 901 F. Supp. 274, 278 (N.D. Ill. 1995) (denying motion to dismiss and holding that severe back pain related to pregnancy could meet legal definition of disability); *Darian v. Univ. of Massachusetts Boston*, 980 F. Supp. 77, 87 (D. Mass. 1997) (holding that plaintiff with severe pelvic bone pain, uterine contractions and irritation of the uterus, uterine pain, and back pain had a legal disability under the ADA).  Plaintiff further argues that reproduction has been recognized by the Supreme Court as a major life activity.  *Bragdon v. Abbott*, 524 U.S. 624, 629 (1998) ("[T]he Rehabilitation Act regulations support the inclusion of reproduction as a major life activity, since reproduction could not be regarded as any less important than working or learning.").

The court has carefully reviewed the parties' arguments.  It agrees with Defendant that pregnancy alone is not a disability under the ADA, but it finds that in this case, where Plaintiff contends that she has a physical impairment that significantly limits her reproductive ability to carry

a normal pregnancy, her incompetent cervix could meet the legal definition of "disability" under the ADA. The court, therefore, assumes, without deciding, that Plaintiff is disabled under the ADA.

### b.      Qualified Individual with a Disability

Defendant argues that even if Plaintiff's incompetent cervix meets the legal definition of disability she still was not a qualified individual under the law because she could not meet the job requirements of Territory Manager. It argues that a disabled employee must still perform the essential obligations of her job:

> [T]he ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the workplace based on the same performance standards and requirements that employers expect of persons who are not disabled.

*Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 808 (5th Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998) (quoting 29 C.F.R. § 1630, App. Background (1996)). It contends that an employee who cannot perform essential job requirements, even with accommodation, is not a qualified individual with a disability.

Plaintiff responds that she is a qualified individual with a disability. She points to the Puwal affidavit, which states that she was qualified for several positions with other pharmaceutical companies. She also argues that she was able to fulfill the essential requirements of her job, and cites the various examples of activities she could have continued even while confined to her home. Appel also questions the job description included with Defendant's motion for summary judgment.

The statute defines a "qualified individual" as:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the

> employer's judgment as to what functions of a job are essential, and
> if an employer has prepared a written description before advertising
> or interviewing applicants for the job, this description shall be
> considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).  The court has considered Inspire's written job description for the Territory Manager as set forth above.  To the extent Plaintiff questions the job description, the court finds that Plaintiff admitted in her deposition to receiving the job description and that she knew that spending time behind the wheel and making in-person visits were essential functions of her job.

The court has already determined that for the purposes of Title VII Plaintiff is not qualified because she could not perform all of the essential requirements of Territory Manager.  Even if Defendant had accommodated Plaintiff fully as set forth in her brief by allowing her to work from home, make telephone calls, and "e-detail" the physicians in her territory, she still could not have fulfilled all the essential requirements of Territory Manager, which required driving, lifting, and having face-to-face meetings at doctor's offices and pharmacies.  Accordingly, the court finds that there is not a genuine issue of material fact whether Plaintiff was a qualified individual with a disability pursuant to the ADA, and Defendant is entitled to judgment as a matter of law on Plaintiff's ADA claim.

## IV.    Other Motions

Also pending are two motions filed by Plaintiff, a motion to strike portions of the Puwal declaration and a motion seeking leave to file a surreply.  The court **denies** both.  Plaintiff's objections to the Puwal declaration relate to his statements about other available jobs.  The court did not rely on this evidence to find that Defendant is entitled to judgment as a matter of law on Plaintiff's claims.  With respect to Plaintiff's motion for leave to file a surreply, the court frowns on

surreplies and finds that Plaintiff has not shown that there are exceptional or extraordinary circumstances justifying such a pleading.  *See* Scheduling Order ¶ 4 (Oct. 2, 2009).

## V.      Conclusion

For the foregoing reasons, the court **grants** Defendant's Motion for Summary Judgment; **denies** Plaintiff's Motion to Strike Portions of the Declaration of Mark Puwal; and **denies** Plaintiff's Motion for Leave to File Sur-Reply Brief in Opposition to Defendant's Motion for Summary Judgment.

**It is so ordered** this 30th day of April, 2010.

Sam A. Lindsay
United States District Judge